Leland L. COMPTON et al., Plaintiffs,

v.

SOCIETE EUROSUISSE, S.A. et al., Defendants.

No. 79–5988–Civ–SMA.

United States District Court,
S. D. Florida,
Miami Division.

July 21, 1980.

J. Robert Olian, Britton, Cohen, Kaufman, Benson & Schantz, Miami, Fla., for plaintiffs.

Jeffrey A. Tew, Miami, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER

ARONOVITZ, District Judge.

This action presents novel questions concerning a judgment debtor's assertion of the Fifth Amendment privilege against self-incrimination in post-judgment proceedings.

Plaintiffs brought this action in 1975 in the United States District Court for the Northern District of Oklahoma. Following a bench trial, Chief Judge H. Dale Cook entered judgment in favor of the plaintiffs against the individual defendant, Allan H. Applestein, in the amount of $100,000.00 actual damages plus interest and $20,000 punitive damages.[1] Plaintiffs moved to enforce the judgment under the applicable Oklahoma statute.[2] Pursuant to Okl.Stat. tit. 11, § 842, Judge Cook ordered the defendant to produce documents and answer questions concerning his assets.

The defendant objected to this order, asserting his privilege against self-incrimination under the Fifth Amendment.[3] He claimed that to compel his testimony regarding his assets might subject him to prosecution for federal tax law violations. In support of this contention, Applestein filed a letter dated July 14, 1978, from the District Director of the Internal Revenue Service. This letter informed Applestein that the Director was recommending that he be criminally prosecuted.

After an evidentiary hearing, Chief Judge Cook sustained the defendant's claim of constitutional privilege and vacated his prior order requiring testimony and production of documents. It was at this point that the action found its way to the Southern District of Florida. Pursuant to 28 U.S.C. § 1963 (1970),[4] plaintiffs registered the Oklahoma judgment in this district, and are now petitioning this Court for aid in the enforcement of the judgment. Florida law, however, provides judgment creditors with a weapon not found in the Oklahoma arsenal of execution procedures. Fla.Stat. § 56.29 sets forth the procedure for deposing a judgment debtor regarding his assets. Under Fla.Stat. § 56.29(8),

> A judgment in an action for the recovery of money or property now or hereafter entered in any district court which has become final by appeal or expiration of time for appeal may be registered in any other district by filing therein a certified copy of such judgment. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.
> *Id.*

1. The record indicates that the United States Court of Appeals for the Tenth Circuit affirmed Judge Cook's decision, issuing its Mandate on October 29, 1979. The affirmance has not been published.

2. *See* Fed.R.Civ.P. 69(a).

3. "No person . . . shall be compelled in any criminal case to be a witness against himself."

4. The statute provides, in part:

[a] party or a witness examined under these provisions is not excused from answering a question on the ground that his answer will tend to show him guilty of the commission of a fraud, or prove that he has been a party or privy to, or knowing of a conveyance, assignment, transfer, or other disposition of property for any purpose . . . . *An answer cannot be used as evidence against the person so answering in any criminal proceeding.*

*Id.* (emphasis added). Plaintiffs argue that the last sentence of this provision is a self-executing grant of immunity for the defendant, and that because the defendant's responses cannot be used against him, he may not assert his Fifth Amendment privilege.

Plaintiffs have, therefore, again served defendant with a subpoena *duces tecum* seeking disclosure of the same information denied them in Oklahoma. The defendant still maintains, however, that he may interpose his privilege against self-incrimination, and has refused to answer any questions regarding his assets on that basis. The plaintiffs have moved for an Order compelling production and testimony, and it is upon this motion that the case is before the Court.

### I.

█ In determining the availability of defendant's Fifth Amendment privilege in these circumstances, the Court must pursue two avenues of inquiry. Initially, the Court must determine whether there is a reasonable probability that the testimony in question will be used in a prosecution against the defendant.[5] A witness may properly invoke the privilege when he "reasonably apprehends a risk of self-incrimination . . . even if the risk of prosecution is remote." *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1087 n.5 (5th Cir. 1979). *See also Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1966). Without this requirement, *any* judgment debtor could assert his Fifth Amendment privilege, and judgment creditors would be powerless to enforce their judgments. "The courts cannot accept Fifth Amendment claims at face value, because that would allow witnesses to assert the privilege where the risk of self-incrimination was . . . nonexistent, thus obstructing the functions of the courts." *United States v. Moreno*, 536 F.2d 1042, 1046 (5th Cir. 1976).

In the instant case, the record contains a letter to the defendant from the District Director of the Internal Revenue Service which indicates a substantial possibility of prosecution.[6] At the other end of the scale, the defendant has conceded that in June, 1980, the Grand Jury investigating him concluded its proceedings and failed to bring forth an indictment.[7]

█ However, this Court need not determine the probability of the defendant's

---

5. Many of the cases that discuss this requirement are either criminal or arise from grand jury proceedings. *See, e. g., Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); *United States v. Moreno*, 536 F.2d 1042 (5th Cir. 1976). The possibility of a witness being criminally prosecuted often appears more imminent in criminal cases or grand jury investigations. However, the cases establish that the privilege against self-incrimination may be invoked "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . . ." *Kastigar v. United States*, 406 U.S. 441, 443, 444, 92 S.Ct. 1653, 1655, 1656, 32 L.Ed.2d 212 (1973). *See also In re Corrugated Container Anti-trust Litigation*, 620 F.2d 1086 (1980); *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir. 1979). *Cf. United States v. Holley*, 481 F.Supp.

61 (S.D.Fla.1979) (ordering enforcement of Internal Revenue Service summons).

6. The letter recites that an investigation has been underway concerning the defendant's tax liability for the years 1972, 1973, and 1975. The investigation, according to the letter, also includes the alleged filing of a false statement, the date of which is not mentioned. The letter then states that "[t]he special agent has concluded that criminal prosecution be instituted against you, and I concur with his recommendation."

7. The Court notes that under 26 U.S.C. § 6531, the statute of limitations for the more serious criminal tax law violations is six years.

prosecution in light of Judge Cook's prior ruling on the same issue. Judge Cook meticulously considered the contents of the information sought by plaintiffs and held that "[f]rom the facts and circumstances in this case it appears that the . . . testimony sought from the defendant, Applestein as to his assets could have a tendency to incriminate him either directly or by furnishing a link in the chain of evidence needed to prosecute him." *Compton v. Societe Eurosuisse, S.A.*, No. 75–C–374–C (N.D.Okl. July 23, 1979) at 6. Judge Cook's determination that the defendant faces a substantial possibility of prosecution constitutes the law of the case. This doctrine "expresses the practice of courts generally to refuse to reopen what has been decided . . . ." *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (Holmes, J.). *See also Steamship Co. of 1949 v. China Union Lines*, 123 F.Supp. 802 (S.D.N.Y.1954). Although invocation of the law of the case doctrine requires the Court to exercise its discretion, *Southern R. R. Co. v. Clift*, 260 U.S. 316, 43 S.Ct. 126, 67 L.Ed. 283 (1922),[8] this Court is persuaded to accept Judge Cook's determination in the Oklahoma proceeding.[9] Based upon Judge Cook's reasoning,[10] this Court adopts his conclusion that there is a reasonable probability that the information sought by the plaintiffs could be used against the defendant in a criminal prosecution.[11]

## II.

The second avenue of inquiry that the Court must pursue is whether the self-executing grant of immunity in Fla.Stat. § 56.29(8) is sufficiently broad to supplant the defendant's privilege against self-incrimination.[12] In arguing against this contention, defendant summarily asserts that a state grant of immunity furnishes no protection from federal prosecution.

The Supreme Court has rejected this contention. In *Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), the petitioner interposed his privilege before a state investigatory commission, despite the commission's grant of immunity to the petitioner. In addressing the petitioner's fear of federal prosecution, the Court recognized the petitioner's dilemma. Accordingly, the Court held that a state grant of immunity would be deemed effective against the federal government:

> We hold the constitutional rule to be that a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in a criminal prosecution against him. We conclude, moreover, that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating crime, the Federal Government must be

---

**8.** In *Southern R. R.*, the Supreme Court distinguished the flexible doctrine of law of the case from the mandatory requirements of *res judicata*: "[t]he prior ruling may have been followed as the law of the case, but there is a difference between such adherence and *res judicata*. One directs discretion; the other supersedes it and compels judgment." *Id.* at 319, 43 S.Ct. at 126.

**9.** "A judge should hesitate to undo his own work. . . . Still more should he hesitate to undo the work of another judge." *Peterson v. Hopson*, 306 Mass. 597, 603, 29 N.E.2d 140 (1940).

**10.** Because Judge Cook conducted an evidentiary hearing on this issue, there is no need for this Court to conduct a similar hearing.

**11.** An alternative analysis would suggest that this Court has no discretion regarding Judge Cook's conclusion and must accept it as collat-

eral estoppel. *See generally United Shoe Machinery Corp. v. United States*, 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708 (1922). This would depend on whether a judgment registered under 28 U.S.C. § 1963 is characterized as a new and distinct judgment, or merely as a supplemental proceeding to enforce the original judgment. *See Stanford v. Utley*, 341 F.2d 265 (8th Cir. 1965).

**12.** Because Oklahoma procedure contains no comparable provision, Judge Cook obviously could not pass on this question. The doctrine of law of the case does not preclude reexamination of a legal issue in light of an intervening law or a change in the law. *See Johnson v. Cadillac Motor Car Co.*, 261 F. 878 (2d Cir. 1919).

prohibited from making any such use of compelled testimony and its fruits.

*Id.* at 79, 84 S.Ct. at 1609 (footnote omitted). Thus, a sufficiently broad grant of immunity by a state must be respected by the federal government as well.

■ This Court's analysis cannot end with *Murphy*, however. The rationale of *Murphy* does not come into play unless the state grant of immunity is first determined to be coextensive with the Fifth Amendment privilege. For if a state grant of immunity is to be given the effect of precluding use of testimony and its fruits in federal prosecutions, it follows, *a fortiori*, that the state grant of immunity must adequately protect against self-incrimination from state prosecution as well.[13] When measured alongside the Fifth Amendment, Fla.Stat. § 56.29(8) fails to provide this protection.

In reaching this conclusion, the Court is guided by several cases comparing specific grants of immunity with the protection contained in the Fifth Amendment. For example, in *Counselman v. Hitchcock*, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892), the Court examined a federal immunity statute which provided that no "evidence obtained from a party or witness by means of a judicial proceeding . . . shall be given in evidence, or in any manner used against him . . . ." *Id.* at 560, 12 S.Ct. at 197. The Court upheld appellant's claim of privilege on the ground that the statute "could not, and would not, prevent the use of his testimony to search out other testimony to be used in evidence against him or his property, in a criminal proceeding in

such court." *Id.* at 564, 12 S.Ct. at 198. The quoted language indicates the Court's concern that the fruits of the compelled testimony could be as damaging to the witness as the testimony itself.

■ In *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1973), the Court held that the protection afforded by the current federal immunity statute, 18 U.S.C. §§ 6002, 6003, was coextensive with the Fifth Amendment. That statute provides "no testimony or other information compelled under [a grant of immunity] (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case . . . ." *Id. Kastigar* distinguished between use and derivative use immunity, on the one hand, and transactional immunity. The former prevents use of the testimony or its fruits against the witness, while the latter prohibits any prosecution concerning the events of which the witness has testified. In holding that a grant of use and derivative use immunity supplanted the Fifth Amendment privilege, *Kastigar* distinguished *Counselman* on the ground that while the statute in *Counselman* granted use immunity, it failed to grant derivative use immunity.[14] *Kastigar* thus required both use and derivative use immunity in order to overcome a Fifth Amendment objection.[15]

In the instant case, the most probative analogy can be found in the grant of immunity set forth in former section 7(a)(10) of the prior Bankruptcy Act,[16] and the cases decided thereunder. Like Fla.Stat. § 56.-

---

**13.** The Fifth Amendment privilege against self-incrimination is applicable to the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

**14.** Prior to *Kastigar*, some courts had read *Counselman* broadly as holding that only transactional immunity could equal the protection contained in the Fifth Amendment. *See, e. g., Napolitano v. Ward*, 457 F.2d 279 (7th Cir. 1972), *cert. denied* 409 U.S. 1037, 93 S.Ct. 512, 34 L.Ed.2d 486 (1973).

**15.** The companion case of *Zicarelli v. N. J. State Comm'n*, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1973) examined a state grant of immunity under *Kastigar's* requirements. The statute there at issue provided that the witness "shall be immune from having such responsive answer given by him or such responsive evidence produced by him, or evidence derived therefrom used to expose him to criminal prosecution. . . ." *Id.* at 475, 92 S.Ct. at 1673. The Court held that this statute granted both use and derivative immunity and thus overcame a Fifth Amendment objection.

**16.** Formerly 11 U.S.C. § 25(a)(10) (repealed).

29(8), section 7(a)(10) of the Bankruptcy Act was a self-executing grant of immunity that automatically attached to a debtor's testimony concerning his assets.[17] Furthermore, the purpose behind both statutes is undoubtedly the same: to compel a debtor to give testimony for the benefit of creditors without fear of criminal prosecution for full disclosure.[18]

Prior to 1970, section 7(a)(10) of the Bankruptcy Act provided that "no testimony given by [the bankrupt] shall be offered in evidence against him in any criminal proceeding. . . ." 52 Stat. 847 (1969). In considering this statute, the courts held that because the statute failed to provide derivative use immunity, a bankrupt could properly invoke the Fifth Amendment privilege against self-incrimination. *See McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924); *Arndstein v. McCarthy*, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138 (1920); 1A Collier on Bankruptcy ¶ 7.21 at 1016.1–1016.5 (14th ed. 1978). Thus, in summarizing the effect of the statute, the Fifth Circuit stated that "the witness faced two alternatives under the [pre-1970] version of the statute: he could choose to testify freely and then later claim whatever protection the statute afforded; or he could refuse to testify on the grounds that the answers sought might be incriminating." *United States v. Goodwin*, 470 F.2d 893, 904 (5th Cir. 1972), *cert. denied* 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973).

In 1970, however, Congress amended section 7(a)(10) of the Bankruptcy Act to preclude the use of evidence derived from compelled testimony. As amended, 11 U.S.C. § 25(a)(10) provided that "no testimony, *or any evidence which is directly or indirectly derived from such testimony*, given by [the bankrupt] shall be offered in evidence against him in any criminal proceeding . . . ." (emphasis added). Congress' stated purpose in amending the statute was to achieve "effective displacement of the privilege against self-incrimination by granting protection coextensive with the privilege." H.R.Rep. No. 1549, 91st Cong. 2d Sess. (1970), quoted at 1970 U.S.Code Cong. & Admin.News p. 4007 at 4008. The courts, faced with the amended statute, invariably found that Congress had accomplished its goal. The additional language in the statute was held to grant both use and derivative use immunity, and thus, precluded the bankrupt from asserting a Fifth Amendment claim of privilege. *See Block v. Consino*, 535 F.2d 1165 (9th Cir. 1976); *United States v. Dornau*, 491 F.2d 473 (2d Cir. 1974); *Goldberg v. Weiner*, 480 F.2d 1067 (9th Cir. 1973); *United States v. Goodwin*, 470 F.2d 893 (5th Cir. 1972); *United States v. Seiffert*, 463 F.2d 1089 (5th Cir. 1972).

When examined in light of the above authorities, it is clear that Fla.Stat. § 56.29(8) fails to grant protection sufficient to displace the Fifth Amendment. Although it states that "[a]n answer cannot be used as evidence against the person so answering in any criminal proceeding," it places no restriction on the use of the fruits of such testimony.[19] The statute thus falls into the same category as that in *Counselman*[20] and the pre-1970 version of Bankruptcy Act § 7(a)(10). Because the Fifth Amendment encompasses both use and derivative use immunity, *Kastigar v. United*

---

17. The 1978 Bankruptcy Code does not contain a self executing grant of immunity. Under 11 U.S.C. § 344, a bankrupt's testimony can only be immunized upon the request of the United States Attorney pursuant to the general immunity statute, 18 U.S.C. §§ 6002, 6003.

18. This is in contrast to the purpose behind general immunity statutes, which grant immunity as a prosecutorial and investigatory tool. *See In re Buonacoure*, 412 F.Supp. 904 (E.D.Pa. 1976); *State v. Schell*, 222 So.2d 757 (Fla.App. 1969).

19. Interestingly, the general immunity statute in Florida, Fla.Stat. § 914.04, goes beyond the protection afforded by the Fifth Amendment, and grants full transactional immunity. *See Tsavaris v. Scruggs*, 360 So.2d 745, 749 n.6 (Fla.1978).

20. Indeed, the statute in *Counselman* was broader than Fla.Stat. § 56.29(8). It provided that the witness' testimony could not "in any manner be used against him . . . ." 142 U.S. at 560, 12 S.Ct. at 197.

*States*, a witness cannot be compelled to testify on the basis of Fla.Stat. § 56.29(8), which provides only the former.

Accordingly, the defendant herein has the right to assert his privilege against self incrimination, and it is thereupon

ORDERED AND ADJUDGED that the plaintiff's motion to compel is DENIED.