**Lynore REISECK, Plaintiff,**

v.

**UNIVERSAL COMMUNICATIONS OF MIAMI, INC., et al., Defendants.**

**CASE NO. 15–20935–MC–ALTONAGA**

United States District Court, S.D. Florida.

Signed August 18, 2015

---

Max Aaron Goldfarb, Miami, FL, for Plaintiff.

Jan Douglas Atlas, Samantha Tesser Haimo, Kopelowitz Ostrow P.A., Fort Lauderdale, FL, for Defendant, Carl Ruderman.

## ORDER

CECILIA M. ALTONAGA, District Judge

**THIS CAUSE** came before the Court on Plaintiff, Lynore Reiseck's ("Plaintiff['s]")

Motion for Reconsideration and Memorandum of Law in Support of Subject Matter Jurisdiction ... ("Motion") [ECF No. 33], filed June 5, 2015, seeking reconsideration of a May 27 Order [ECF No. 32], denying Plaintiff's Motion for Proceedings Supplementary and Impleading Third Party ("Motion for Proceedings Supplementary") [ECF No. 30]. Defendant, Carl Ruderman ("Ruderman") filed a Response ... ("Response") [ECF No. 34] and Supplemental Memorandum ... ("Suppl.Memo") [ECF No. 37] in opposition to the Motion. Plaintiff filed a Reply ... ("Reply") [ECF No. 38]. Defendants, Universal Communications of Miami, Inc. ("Universal Communications"); Blue Horizon Media, Inc. ("Blue Horizon"); Douglas Gollan ("Gollan"); Geoffrey Lurie ("Lurie"); and David Bernstein ("Bernstein")[1] have not responded to the Motion, nor have they otherwise appeared in this action. The Court has carefully considered the parties' written submissions, the record, and applicable law.

## I. BACKGROUND

### A. The New York Litigation

On October 29, 2014, Plaintiff obtained a Judgment [ECF No. 1] in the amount of $284,078.86 against Ruderman, Universal Communications, and Blue Horizon in the action styled *Reiseck v. Universal Communications of Miami, Inc. et al.*, Case No. 1:06–CV–00777–LGS–JCF, in the U.S. District Court for the Southern District of New York ("S.D.N.Y. Case"). The S.D.N.Y. Case began in 2004, when Plaintiff filed suit in New York state court against Defendants, alleging wrongful withholding of overtime pay in violation of the federal Fair Labor Standards Act and New York state law. (*See* S.D.N.Y. Case, Mar. 19, 2014 Opinion & Order ("S.D.N.Y. Order") [ECF No. 152] 1).[2] Defendants removed the action to the Southern District of New York in 2006. (*See id.*). The parties litigated a series of substantive motions as well as an appeal, and in 2012, the district court granted summary judgment in favor of Lurie and Bernstein but denied it as to Ruderman and Blue Horizon. (*See id.* 1–2). As for Gollan, Plaintiff later settled her claim against him. (*See id.* 3).

On July 12, 2013, counsel for Ruderman, Universal Communications, and Blue Horizon moved to withdraw, advising the court those three defendants had discharged his firm. (*See id.* 2). On July 16, 2013, the court granted the motion and ordered Universal Communications and Blue Horizon to retain new counsel by July 29, 2013. (*See id.*). On July 23, 2013, Ruderman informed the court he did not intend to defend the claims against him. (*See id.*). On August 22, 2013, the court ordered Universal Communications and Blue Horizon to show cause at a hearing why they should not be found in default and judgment should not be entered against them on the issue of liability. (*See id.*). Universal Communications and Blue Horizon failed to appear by counsel at the show cause hearing. (*See id.*).

On December 13, 2013, Plaintiff filed a motion for default judgment against Ruderman, Universal Communications, and Blue Horizon. (*See id.* 3). The court set a show cause hearing on the matter, which it

---

1. Ruderman, Universal Communications, Blue Horizon, Gollan, Lurie, and Bernstein are referred to collectively as "Defendants."

2. The S.D.N.Y. Order is attached as Exhibit A to the Motion for Proceedings Supplementary.

adjourned twice when Ruderman, Universal Communications, and Blue Horizon failed to appear. (*See id.*). Despite these failures to appear, the failure to comply with court orders requiring pretrial submissions, and failure to file a formal response to the motion for default judgment, Ruderman sent the court e-mails asking it to "closely scrutinize the amount of damages sought by Plaintiff." (*Id.*). On March 19, 2014, the court found Ruderman, Universal Communications, and Blue Horizon in default, adjudicated them liable, and referred the matter to a magistrate judge for an inquest on damages, attorney's fees, and costs. (*See id.* 5–7). On October 30, 2014, the court entered the Judgment, awarding Plaintiff $284,078.86 against Ruderman, Universal Communications, and Blue Horizon, jointly and severally. (*See* Judgment).

## B. The Florida Litigation

### 1. Registering the Judgment

According to Ruderman, in January 2015, he received a "Notice of Entry of Foreign Judgment With Attached Affidavit" that appeared to have been filed in Florida state court, but upon further diligence, he was unable to confirm with the Florida state court or with Plaintiff's prior counsel whether the Notice had in fact been filed. (Suppl. Memo 1; *see also* Objection ... ("Objection") [ECF No. 7] 2 n.1). Thus, "in an abundance of caution," Ruderman filed a complaint to invalidate foreign judgment ("complaint") [ECF No. 34–2] in Florida state court in the case styled *Ruderman v. Reiseck*, Case No. 2015–002927–CA–01 (the "State Court Case"). (Suppl. Memo 1–2). The complaint alleged Plaintiff failed to comply with Florida's procedural requirements for filing a judgment in state court, and it

sought to invalidate the Judgment on substantive grounds. (*See generally* compl.). The complaint also requested enforcement of the Judgment be stayed pending a determination on the merits of the claims. (*See generally id.*). According to Reiseck, she "was not served with the initial summons and complaint" and did not receive "proper notice" of the State Court Case until June 5, 2015. (Reply 8).

Meanwhile, on March 6, 2015, about four months after the Judgment was entered, Plaintiff registered the Judgment in this District. (*See* [ECF No. 1]). On that same day the Clerk of Court issued a Writ of Execution [ECF No. 5] with respect to property in this District belonging to Ruderman, Universal Communications, and Blue Horizon. On April 1, 2015, Ruderman first appeared in this action and, without filing a motion seeking affirmative relief, filed the Objection to the Writ of Execution, arguing (1) Plaintiff failed to comply with Florida's procedural rules for filing a judgment in state court and (2) "the Writ of Execution is invalid and unenforceable as to Ruderman" based on three exemptions. (Objection 1–2). Plaintiff responded to the Objection on April 10, 2015 (*see* Opposition ... [ECF No. 8]), and on April 20, 2015, Ruderman filed a Reply ... [ECF No. 9].

### 2. The Levy

On May 7, 2015, Plaintiff filed a sealed *Ex–Parte* Motion for Break Order ... [ECF No. 11], which the Court granted (*see* Sealed Break Order [ECF No. 13]), directing the U.S. Marshal to execute and enforce the Writ of Execution with respect to assets owned by Ruderman located at his residence in Aventura, Florida (the "Aventura Property"). (*See* Suppl. Memo 2). On May 11, 2015, the U.S. Marshal appeared at the Aventura Property and

began seizing assets that Ruderman contended were owned by third parties, including The Ruderman Family Trust and The Ruderman Art Trust (together, the "Trusts"). (*See id.*).

During the levy, Ruderman filed an Emergency Motion to Stay Levy/Execution and Request for Immediate Hearing ("First Emergency Motion") [ECF No. 14], seeking to stay the levy pending an adjudication of the issues raised in the Objection. Later that same day, Ruderman filed an Emergency Motion to Enforce Agreement and Restore the Status Quo ("Second Emergency Motion") [ECF No. 15], stating counsel for Ruderman and counsel for Plaintiff discussed Ruderman's objections during the levy and reached an agreement whereby Ruderman would wire $579,000.00 (about double the amount of the Judgment) to counsel for Plaintiff in exchange for Plaintiff's stay of the levy and return of all assets seized during the levy. (*See id.* 2–3). The agreement would remain in effect until the Court adjudicated Ruderman's objections or the parties reached a settlement. (*See id.* 3).

According to Ruderman, despite his adherence to the agreement, Plaintiff's counsel "refused to stop the levy and executed on significant assets located at the [Aventura] Property," including artwork that was "clearly delineated" as owned by the Trusts in paperwork Ruderman's counsel reviewed with Plaintiff's counsel. (*Id.* 3–4 (alteration added)). Plaintiff's counsel "seized hundreds of thousands of dollars-worth of assets from the [Aventura] Property and, in addition, ha[d] $579,000.00 in his trust account." (*Id.* 4 (alterations added; emphasis omitted)). Once Ruderman's counsel found out the U.S. Marshal left the Aventura Property with the assets, Ruderman's counsel immediately contacted Plaintiff's counsel at his office, only to learn he had already left for the day. (*See id.*). The Second Emergency Motion therefore asked the Court to, among other things, enforce the parties' purported agreement in order "to restore the status quo." (*Id.*).

The next morning, on May 12, 2015, Plaintiff filed a Response ... [ECF No. 16] in opposition to the Second Emergency Motion, explaining Plaintiff levied on the assets despite the agreement the parties attempted to reach because, by about 4:00 p.m. the previous day, and despite his efforts, Plaintiff's counsel was unable to confirm receipt of the wire transfer of funds Ruderman's counsel had purportedly made. (*See id.* 3). A few hours after Plaintiff filed her response brief, the parties filed a Joint Statement ... [ECF No. 20], advising Plaintiff's counsel confirmed receipt of the funds and the parties agreed the seized assets would be returned to the Aventura Property. (*See id.* 1). Still on the same day, the Court held a hearing per the parties' request, during which the Court denied the First Emergency Motion as moot and granted the Second Emergency Motion. (*See* May 12 Order [ECF No. 23]).

### 3. Post–Levy Proceedings

On May 18, 2015, Ruderman filed a Motion to Re–Open Case and Convert to Civil Action ("Motion to Re–Open") [ECF No. 25], in order to commence "[f]urther proceedings ... with regard to Plaintiff's attempted execution of the [Judgment] as well as in connection with the [o]bjections raised by Ruderman." (*Id.* 2 (alterations added)). As Ruderman later explained, the "Motion to Re–Open was for the purpose of asserting a counterclaim against Reiseck for negligent execution of the ... Judgment, among other things." (Suppl.

Memo 3 n.2 (alteration added)). On May 27, 2015, Plaintiff filed the Motion for Proceedings Supplementary to implead third party Steven A. Schwartz as trustee for the Trusts. (*See* Mot. for Proceedings Supplementary 1). Plaintiff argued the Trusts were fraudulently created last year in the months leading up to the Judgment with the purpose of thwarting future efforts to collect on the impending judgment by transferring Ruderman's assets to the Trusts, which are valued at over $5,000,000.00. (*See id.* 1–3).

On May 27, 2015, the Court held a hearing on the parties' motions (*see* [ECF No. 31]), during which the Court *sua sponte* inquired into (1) the legal basis upon which the Court would convert this case from a miscellaneous case to a civil case, if the Court were to grant the Motion to Re-Open; and (2) the basis for subject-matter jurisdiction over the supplementary proceedings. Plaintiff and Ruderman did not offer satisfactory responses, and the Court therefore denied both motions, advising the parties they could seek reconsideration provided they adequately address the concerns raised by the Court at the hearing. (*See* May 27 Order).

The day following the hearing, Ruderman filed an amended complaint [ECF No. 37–2] in the State Court Case. The amended complaint seeks (1) a declaratory judgment determining "whether the levy was appropriate in light of Ruderman's filed Objections, which had not yet been adjudicated by the District Court, as well as the Agreement between the parties;" and (2) damages for negligence in how the Writ of Execution was enforced during the levy, premised in part on the allegation "many items were damaged during the levy and, in fact, it has been subsequently determined that various items (owned by third-

parties) are missing." (*Id.* Counts I, II). The relief Ruderman sought in the complaint does not seem to appear in the amended complaint.

Reiseck was served with the amended complaint on June 5, 2015 (*see* Resp. ¶ 6)—the same day she filed the instant Motion in this case, seeking reconsideration of the Court's denial of her Motion for Proceedings Supplementary. (*See generally* Mot.).

## II. LEGAL STANDARD

 "Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Instituto de Prevision Militar v. Lehman Bros., Inc.,* 485 F.Supp.2d 1340, 1343 (S.D.Fla.2007) (quoting *Cover v. Wal-Mart Stores, Inc.,* 148 F.R.D. 294, 295 (M.D.Fla.1993)) (internal quotation marks omitted). Reconsideration is granted only in extraordinary circumstances and is "committed to the sound discretion of the district judge." *Tristar Lodging, Inc. v. Arch Speciality Ins. Co.,* 434 F.Supp.2d 1286, 1301 (M.D.Fla.2006) (quoting *Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.,* 763 F.2d 1237, 1238–39 (11th Cir.1985)) (internal quotation marks omitted).

## III. ANALYSIS

Plaintiff requests seeks the Court reconsider denial of the Motion for Proceedings Supplementary, arguing the Court has ancillary jurisdiction over the supplementary proceedings. (*See generally* Mot.). Ruderman does not seek reconsideration of the Court's denial of his Motion to Re-Open; rather, he agrees with Plaintiff the Court has ancillary jurisdiction over Plain-

tiff's requested supplementary proceedings, but he nevertheless argues the Court should abstain from proceeding further in light of the State Court Case. (*See generally* Resp.; Suppl. Memo).

## A. Supplementary Proceedings

 The Court cannot grant Plaintiff's request for supplementary proceedings unless it has jurisdiction to conduct them. This is because federal courts are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir.1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994)). Accordingly, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Id.* at 410.

Plaintiff commenced this case by registering the Judgment in this District. Under 28 U.S.C. section 1963, "[a] judgment in an action for the recovery of money or property entered in any ... district court ... may be registered by filing a certified copy of the judgment in any other district...." *Id.* (alterations added). "A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." *Id.* The Judgment thus may be enforced in the Southern District of Florida as if it were a judgment rendered here, notwithstanding the fact it was issued in the Southern District of New York.

Plaintiff, however, has not simply registered the Judgment and obtained a writ of execution. Plaintiff seeks, pursuant to Federal Rule of Civil Procedure 69(a)(1), to commence supplementary proceedings under Florida Statute section 56.29(6)(b),[3] which provides:

> When any gift, transfer, assignment or other conveyance of personal property has been made or contrived by the judgment debtor to delay, hinder, or defraud creditors, the court shall order the gift, transfer, assignment or other conveyance to be void and direct the sheriff to take the property to satisfy the execution. This does not authorize seizure of property exempted from levy and sale under execution or property which has passed to a bona fide purchaser for value and without notice. Any person aggrieved by the levy may proceed under [sections] 56.16–56.20.

*Id.* (alteration added).

 Plaintiff contends the Court has ancillary jurisdiction over the requested supplementary proceedings under the reasoning the Eleventh Circuit applied in *National Maritime Services, Inc. v. Straub*, 776 F.3d 783 (11th Cir.2015). In that case, the court explained:

> Ancillary jurisdiction exists in two circumstances: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees. The latter category encompasses a broad range of supplementary proceedings in-

---

**3.** "The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located...." Fed. R. Civ. P. 69(a)(1) (alterations added).

volving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances. But ancillary jurisdiction does not extend to a new lawsuit to impose liability for a judgment on a third party.

*Id.* at 786–87 (internal quotation marks and citations omitted).

The plaintiff in *National Maritime* commenced supplementary proceedings under Florida Statute section 56.29(6)(b) (the same statute under which Plaintiff in the instant action seeks relief) to collect on a judgment by voiding the defendant's fraudulent transfer of assets to an impleaded third party. *See id.* at 785. The undersigned *sua sponte* raised the issue of whether it had subject matter jurisdiction over the supplementary proceedings and found it had ancillary jurisdiction. *See id.* The Eleventh Circuit affirmed because by limiting the third party's liability to the proceeds the defendant fraudulently transferred to the third party, the plaintiff "sought to disgorge [the third party] of a fraudulently transferred asset, not to impose liability for a judgment on [the] third party." *Id.* at 787 (alterations added).

*National Maritime* is factually distinct from the instant case, because in *National Maritime*, the same Court that originally rendered the judgment was asked to enforce it in the supplementary proceeding. *See id.* at 785. The parties here, although agreeing there is subject matter jurisdiction, offer no authority establishing ancillary jurisdiction exists in a case in which a federal court in one district is asked to conduct supplementary proceedings to enforce a judgment originally rendered in another district. Nevertheless, a former Fifth Circuit case, *Gullet v. Gullet*, 188

F.2d 719 (5th Cir.1951), bridges the gap between Plaintiff's requested supplementary proceedings and those conducted in *National Maritime.*

In *Gullet,* the former Fifth Circuit upheld the use of garnishment proceedings in the Southern District of Florida conducted pursuant to Florida statute to collect on a judgment originally rendered in the District Court for the District of Columbia but registered in this District. *See id.* at 720–21. In so holding, the court of appeals recognized the district court had the power to conduct the "ancillary" proceeding pursuant to the then-current versions of Federal Rule of Civil Procedure 69 and 28 U.S.C. section 1963. *Id.* The fact *Gullet* involved garnishment proceedings, whereas the instant case involves supplementary proceedings under section 56.29(6), is, at least with respect to subject matter jurisdiction, a distinction without a difference. *Cf. Jackson–Platts v. Gen. Elec. Cap. Corp.,* 727 F.3d 1127, 1139 (11th Cir.2013) (finding no "principled distinction" between garnishment proceedings under Florida statute and supplementary proceedings under section 56.29(6) in the context of determining whether such actions are removable "civil actions" under 28 U.S.C. section 1441).

Indeed, in *Compton v. Societe Eurosuisse, S.A.,* 494 F.Supp. 836 (S.D.Fla. 1980), the court was asked to enforce, by way of supplementary proceedings under the then-current version of section 56.29, a judgment registered here but originally rendered in the District Court for the Northern District of Oklahoma. *See id.* at 837–38. While the judgment creditor in *Compton* ultimately failed to obtain relief for reasons unrelated to the instant case, the court's decision indicates no dispute over its subject matter jurisdiction, which

would have been a necessary threshold question. *See id.* at 841–42. Thus, the district courts in both *Gullet* and *Compton* had ancillary jurisdiction to enforce judgments rendered in other districts. It follows the Court has ancillary jurisdiction over the supplementary proceedings Plaintiff wishes to commence under section 56.29(6)(b) to void the allegedly fraudulent transfer of Ruderman's assets to the Trusts.

Satisfied subject matter jurisdiction exists, the Court also finds Plaintiff is entitled to supplementary proceedings. Section 56.29(1) indicates "the two jurisdictional prerequisites for supplementary proceedings are (1) an unsatisfied writ of execution, and (2) an affidavit averring that the writ is valid and unsatisfied along with a list of persons to be impleaded." *Gen. Trading Inc. v. Yale Materials Handling Corp.,* 119 F.3d 1485, 1496 n. 22 (11th Cir.1997) (internal quotation marks and citations omitted); *see also* Fla. Stat. § 56.29. No other showing is necessary to implead third parties, and Plaintiff has filed both the unsatisfied writ of execution and the required affidavit. (*See* Amended Affidavit ... [ECF No. 29] ).

## B. Abstention

■ The Court's subject matter jurisdiction notwithstanding, Ruderman argues the Court "should abstain from presiding over this supplementary proceeding in favor of the state court." (Suppl. Memo 4). The Supreme Court has stated there is a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (citations omitted). *Colorado River* ab-

stention provides an exception by which "a District Court may decline to exercise or postpone the exercise of its jurisdiction" so that a related state court case may proceed in its stead, but this exception is "extraordinary and narrow." *Id.* at 813, 96 S.Ct. 1236 (internal quotation marks and citation omitted).

■ "A threshold requirement for application of the *Colorado River* [abstention] doctrine is that the federal and state cases be sufficiently parallel." *Acosta v. James A. Gustino, P.A.,* 478 Fed.Appx. 620, 621 (11th Cir.2012) (alteration added). To be parallel, the state and federal cases must "involve substantially the same parties and substantially the same issues." *Ambrosia Coal & Constr. Co. v. Pages Morales,* 368 F.3d 1320, 1330 (11th Cir. 2004). Although there is "no clear test for deciding whether two cases contain substantially similar parties and issues," "the balance ... begins tilted heavily in favor of the exercise of the court's jurisdiction." *Acosta,* 478 Fed.Appx. at 622. At least one metric for assessing the propriety of abstention is whether "the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 28, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (citation omitted). "[I]f there is any substantial doubt about whether two cases are parallel the court should not abstain." *Acosta,* 478 Fed.Appx. at 622 (alteration added; citation omitted).

Ruderman and Plaintiff are the only named parties in the State Court Case (*see generally* am. compl.), and they are also the only parties who have appeared in this case. At the same time, the trustee for the Trusts is an impleaded defendant in this case, and still other parties are named

as defendants here despite their failure to appear. Plaintiff rightly raises doubts about whether the parties in both cases are substantially similar (*see* Reply 3), but the Court does not need to resolve those doubts because it is clear the issues in the cases are not substantially similar.

■ According to Ruderman, both cases "clearly arise from [Plaintiff]'s execution of the ... Judgment." (Suppl. Memo 6 (alterations added)). While both cases do involve Plaintiff's execution of the Judgment, that is not the end of the inquiry. The State Court Case concerns the limited question of whether the Writ of Execution was properly enforced during the levy. This case, in contrast, concerns not only the Writ of Execution but also supplementary proceedings regarding Ruderman's allegedly fraudulent transfer of assets to the Trusts. Further, if the last several months are any indication of what the future holds, this case may involve additional proceedings to aid in execution of the Judgment. It is fairly clear resolution of the State Court Case would not leave the Court with "nothing further to do," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28, 103 S.Ct. 927, and therefore the Court has more than a "substantial doubt" about whether this case and the State Court Case have substantially similar issues—the two cases are not parallel. *See Acosta*, 478 Fed.Appx. at 622 (finding cases not parallel despite overlapping issue).

■ Assuming this case is parallel to the State Court Case, *see Jackson–Platts*, 727 F.3d at 1140–41, abstention nevertheless is not proper. The Eleventh Circuit has identified six factors district courts must weigh in a *Colorado River* abstention analysis of two parallel proceedings:

(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

*Ambrosia Coal*, 368 F.3d at 1331 (citation omitted). A district court also should consider "the vexatious or reactive nature of either the federal or the state litigation," *id.* (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 17 n. 20, 103 S.Ct. 927), as well as "whether the concurrent cases involve a federal statute that evinces a policy favoring abstention," *Ambrosia Coal*, 368 F.3d at 1331 (citing *Colo. River*, 424 U.S. at 819, 96 S.Ct. 1236).

■ The parties are correct the first factor—jurisdiction over property—is neutral here. *See Jackson–Platts*, 727 F.3d at 1141 (finding the factor "applies only where there is a proceeding in rem" (citation omitted)). Ruderman is incorrect the second factor—inconvenience of the federal forum—is also neutral. (*See* Suppl. Memo 7). Rather, where, as here, the federal forum and state forum are in close geographic proximity, the fora "are equally convenient" and the factor "cuts against abstention." *Jackson–Platts*, 727 F.3d at 1141 (citations omitted).

As for the third factor—the potential for piecemeal litigation—according to Ruderman, "[t]his case presents the danger of piecemeal litigation because both the State Court Case and the instant action arise out of the same set of operative facts relating to execution of the Foreign Judgment." (Suppl. Memo 8 (alteration added)). As an initial matter, Ruderman's characterization of the operative facts of the cases is

flawed. The State Court Case is predicated on Plaintiff's allegedly negligent enforcement of the Writ of Execution. Whether Plaintiff was negligent in enforcing the Writ of Execution will not resolve the allegation presented here that Ruderman fraudulently transferred assets to the Trusts to evade paying Plaintiff the Judgment she is owed. Unlike the parallel proceedings in *Sini v. Citibank, N.A.*, 990 F.Supp.2d 1370 (S.D.Fla.2014), the two cases here are not "so inextricably intertwined in both their factual and legal issues that dual litigation would likely result in deleterious duplication of judicial resources." *Id.* at 1379.

Of course, neither case would exist if not for the years-long litigation that took place in New York and the subsequent registration of the Judgment in this District. And perhaps some issues in one case will have preclusive effect on issues in the other (the parties' briefing on this question is conclusory and unsupported). Nevertheless, the operative facts and legal issues in the two cases are not so duplicative as to warrant the Court's abstention:

> Although the dual proceedings in this instance will likely result in some unremarkable repetition of efforts and possibly some piece-by-piece decision-making, there is no indication that piecemeal litigation poses any greater waste or danger here than it does in the vast majority [of] federal cases with concurrent state counterparts. As we have emphasized, federal courts are almost invariably obligated to exercise otherwise valid jurisdiction over such cases.

*Ambrosia Coal,* 368 F.3d at 1333 (alteration added). The third factor therefore does not favor abstention. *See Jackson–Platts,* 727 F.3d at 1142–43 (finding factor does not favor abstention despite two separate supplementary proceedings arising out of the same case, one in state court and the other in federal court).

Next, Ruderman argues the fact the State Court Case was filed first weighs in favor of abstention. While the order in which the fora obtained jurisdiction is relevant, "[w]hat matters is not so much the chronological order in which the parties initiated the concurrent proceedings, but the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier." *Id.* at 1142 (alteration added; internal quotation marks and citation omitted). "This factor, as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 21, 103 S.Ct. 927.

The fact the State Court Case was filed one month before the instant action is unremarkable given the instant action was commenced by the registering of a Judgment rendered in a federal case that began over ten years ago. Plaintiff does not completely exaggerate in asserting "it is outrageous of [Ruderman] to claim that both cases are in the early phases of litigation." (Reply 5 (alteration added)). Furthermore, even if the progress of the instant action is measured separately from the S.D.N.Y. Case, this action still has progressed more than the State Court Case given the parties' extensive motion practice. The State Court Case, by contrast, has had a couple of filings as well as a hearing regarding the postponement of discovery (*see id.* 5–6); thus, "no substantial proceedings" have taken place. *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 22, 103 S.Ct. 927; *see also Ambrosia Coal,* 368 F.3d at 1333 ("Although the Puerto Rico Case was filed first, the parties ostensibly

concede that the federal case has progressed further.").[4]

Yet another fact lessens the significance of the earlier filing of the State Court case by one month: the complaint originally filed in the State Court Action sought to invalidate the Judgment on the ground Plaintiff erroneously registered the Judgment in Florida state court. The amended complaint in the State Court Case, upon which Ruderman premises his abstention arguments, was filed almost three months after this case was filed, and is predicated almost entirely on the levy—an event that occurred as a product of the litigation in the instant case. Thus, the current iteration of the State Court Case is little more than an off-shoot of this federal case. When assessed pragmatically and realistically, the fourth factor, like the second and third, cuts against abstention.

Ruderman argues the fifth factor— whether state or federal law applies— weighs in favor of abstention because state law will govern Plaintiff's supplementary proceeding. (*See* Suppl. Memo 8–9). "But this factor favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve." *Jackson–Platts*, 727 F.3d at 1143 (citations omitted). Plaintiff has commenced a supplementary proceeding under Florida Statute section 56.29(6), which Florida courts have interpreted in part by incorporating the legal standards of Florida's Uniform Fraudulent Transfer Act, Florida Statute sections 726.101–.201 ("UFTA"). *See Jackson–Platts*, 727 F.3d at 1136–37 (citations omitted). As far as the UFTA is concerned, "[n]othing suggests that Florida's UFTA is the kind of

complex law that raises thorny and difficult state law questions; federal courts are regularly called upon to resolve state law claims of fraud, including claims arising under Florida's UFTA." *Id.* at 1143 (alteration added; citations omitted). The same reasoning applies to the extent section 56.29(6) is interpreted and applied without resorting to the UFTA; certainly Ruderman cites no authority suggesting the contrary. The fifth factor therefore does not favor abstention.

Ruderman concedes the sixth factor— the adequacy of the state court to protect the parties' rights—is neutral, but Ruderman also argues the instant suit is a "vexatious" and "reactive" filing given it commenced after the State Court Case. (Suppl. Memo 9–10). Common sense says there is nothing vexatious or reactive about a plaintiff enforcing a federal judgment in a federal court after litigating a case for over a decade, only to find funds for the judgment she is owed are nowhere to be found.

Further, while the State Court Case originally challenged the procedure by which Plaintiff registered the Judgment as well as the validity of the Judgment, Ruderman withdrew those claims when he filed the amended complaint, effectively rendering the original purpose of the State Court Case a non-issue today. Ruderman does still complain Plaintiff frustrated his attempt to obtain a stay of enforcement of the Judgment in state court (relief Ruderman sought in the complaint before it was amended), but Ruderman only has himself to blame: Plaintiff was not properly served with notice of the State Court Case until June 5, 2015, and the docket for the

---

4. Assuming, for the sake of argument, both cases are "at equal stages of litigation," that nevertheless does not weigh in favor of abstaining. *Jackson–Platts*, 727 F.3d at 1142 (citation omitted).

State Court Case shows no indication Ruderman did much of anything to obtain a stay, such as filing a motion.

If anything, the amended complaint in the State Court Case is a reactive and vexatious filing: Ruderman attempted to assert those claims in this case via the Motion to Re–Open, was frustrated in his efforts to do so, and was given leave to seek reconsideration; instead of seeking reconsideration, he filed his claims in state court and now attempts to use those state court proceedings to foreclose further action in this case. Given state courts, unlike federal courts, are courts of general jurisdiction, the *Colorado River* exception would swallow the rule if all the exception required was a defendant's assertion of claims in state court he could have asserted in an ongoing federal proceeding. *Cf. Ambrosia Coal,* 368 F.3d at 1333 ("If this mistaken approach were in fact the rule, defendants could always escape federal courts simply by filing parallel state lawsuits.").

Finally, the parties do not address "whether the concurrent cases involve a federal statute that evinces a policy favoring abstention," *id.* at 1331 (citing *Colo. River,* 424 U.S. at 819, 96 S.Ct. 1236). The Court finds no statute here that, like the statute in *Colorado River,* evinces such a policy.

Having conducted "a careful balancing of the important factors as they apply in [this] case, with the balance heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 16, 103 S.Ct. 927 (alteration added), the Court concludes abstention is improper.

## IV. CONCLUSION

Given the foregoing analysis, reconsideration of the May 27 Order's denial of Plaintiff's Motion for Proceedings Supplementary is warranted. In sum, the Court has ancillary jurisdiction over the supplementary proceedings Plaintiff seeks to commence, those supplementary proceedings are warranted, and abstention is not proper. It is therefore **ORDERED AND ADJUDGED** that the Motion [ECF No. 33] is **GRANTED in part** as follows:

1. The Clerk of Court is directed to mark this case as "OPEN," and properly designate it a "CIVIL" case rather than a "MISCELLANEOUS" case. Plaintiff is responsible for paying the Clerk any difference in the filing fee.

2. Third party Steven A. Schwartz, as trustee for the Trusts, is impleaded pursuant to Florida Statute section 56.29 for the purpose of supplementary post-judgment proceedings in aid of execution.

3. Plaintiff shall serve a copy of this Order on Steven A. Schwartz and submit proof of such service to the Court within ten (10) calendar days of the date of this Order.

4. Steven A. Schwartz shall respond, **within 20 days from the date of service,** to this Order showing cause why the assets now in his possession and control, transferred to him by Defendant, Carl Ruderman, should not be declared fraudulently acquired.

5. Within ten (10) calendar days of a response from Steven A. Schwartz, the parties shall file a scheduling report containing their proposed schedule for resolution of these post-judgment supplementary proceedings.

**DONE AND ORDERED.** in Miami, Florida, this 18th day of August, 2015.