[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15349

_____

D.C. Docket No. 0:10-cv-61555-CMA


NATIONAL MARITIME SERVICES, INC.,

Plaintiff-Appellee,

versus

GLENN F. STRAUB,
BURRELL SHIPPING COMPANY, LLC,

Defendants-Appellants.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 13, 2015)

Before WILLIAM PRYOR and JORDAN, Circuit Judges, and WALTER,[*] District
Judge.

WILLIAM PRYOR, Circuit Judge:

---

[*] Honorable Donald E. Walter, United States District Judge for the Western District of
Louisiana, sitting by designation.

This appeal requires us to decide whether the district court had ancillary jurisdiction over a supplementary proceeding to avoid a fraudulent transfer by a judgment debtor. National Maritime Services, Inc., sued Burrell Shipping Company, LLC, for amounts owed for management and custodial services provided for a vessel. After National Maritime obtained a judgment in its favor, it discovered that Burrell Shipping had transferred all of its assets to its owner, Glenn F. Straub. National Maritime then initiated a supplementary proceeding, Fed. R. Civ. P. 69; Fla. Stat. § 56.29(6), to void the transfer, and the district court later entered a judgment against Straub. Because the district court had ancillary jurisdiction over this supplementary proceeding and the record supports the finding of a fraudulent transfer, we affirm.

## I. BACKGROUND

National Maritime filed a complaint in the district court against Burrell Shipping and Straub for breach of contract and unjust enrichment. The claims arose from management and custodial services that National Maritime had provided for the M/V/ Island Adventure, a vessel owned by Burrell Shipping. The district court had subject matter jurisdiction based on the maritime nature of the controversy, 28 U.S.C. § 1333. While that action was pending, Burrell Shipping sold the vessel, its only asset, to a boat scrapper for $2,249,000. Burrell Shipping then transferred the proceeds of the sale to Straub.

2

Straub is the sole owner of Burrell Shipping and its president, chief operating officer, and managing member. Straub is also the director and president of Burrell Industries, Inc. To facilitate the purchase of the vessel, Straub loaned Burrell Industries $3.2 million in exchange for a promissory note. Burrell Industries in turn loaned Burrell Shipping $3.2 million by a promissory note. Burrell Shipping then granted Burrell Industrials a mortgage for the vessel to secure the promissory note and purchased the vessel from the United States Marshals Service.

After a bench trial in June 2011, the district court entered a final judgment in favor of National Maritime and against Burrell Shipping in the amount of $99,660.05, plus interest. But the district court ruled that Straub was not individually liable to National Maritime. National Maritime attempted to execute on its judgment, but was unsuccessful because Burrell Shipping had no assets.

National Maritime then initiated a supplementary proceeding against Straub in "accord[ance] with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a). Based on a Florida law that permits a trial court to void a transfer of property that "has been made . . . by the judgment debtor to delay, hinder, or defraud creditors," Fla. Stat. § 56.29(6)(b), National Maritime asked the district court to void the transfer of proceeds from Burrell Shipping to Straub.

3

After our decision in *Jackson-Platts v. General Electrical Capital Corporation*, 727 F.3d 1127 (11th Cir. 2013), the district court raised *sua sponte* the question whether it had subject-matter jurisdiction to entertain the supplementary proceeding against Straub. After the parties submitted memoranda of law, the district court ruled that it had subject-matter jurisdiction. The district court explained that it had "ancillary jurisdiction [because] . . . National Maritime is seeking assets of the Judgment Debtor, Burrell [Shipping], that are found in the hands of a third party, Straub." *Nat'l Maritime Servs., Inc. v. Straub*, 979 F. Supp. 2d 1322, 1326 (S.D. Fla. 2013).

The district court found that before the sale of the vessel Burrell Shipping had never generated its own revenues and had operated on loans or funds provided by Burrell Industries. When Burrell Shipping sold the vessel, its liabilities "exceeded its assets by at least $4 million." *Id.* To close the sale, Burrell Shipping had to deliver the vessel to the buyer free of all encumbrances. Burrell Industries agreed to release the mortgage in exchange for the proceeds of the sale, but the proceeds were transferred directly to Straub, not Burrell Industries.

The district court found that Straub is an insider of Burrell Shipping and of Burrell Industries. The district court also found that Straub "controlled and received the transfer" and failed to provide consideration for the transfer. *Id.* The district court determined that, "[a]t the time of the transfer, Straub was aware or

4

should have been aware that Burrell[ Shipping]'s liabilities exceeded its assets, he was aware or should have been aware of the pending lawsuit against Burrell [Shipping] and himself, and he was aware or should have been aware that Burrell [Shipping] owed National Maritime in excess of $90,000.00." *Id.*

The district court ruled that the transfer of proceeds was fraudulent on two grounds. First, the district court found that the transfer was made with "actual intent to hinder, delay, or defraud," Fla. Stat. § 726.105(1)(a). *Straub*, 979 F. Supp. 2d at 1327–29.  Second, the district court found that the transfer was made to an insider for an antecedent debt when the insider should have known that the debtor was insolvent, Fla. Stat. § 726.106(2). *Straub*, 979 F. Supp. 2d at 1329–30. The district court ruled that the transfer was void and entered judgment against Straub in the amount of the final judgment against Burrell Shipping.

## II. STANDARDS OF REVIEW

Two standards of review govern this appeal. First, we review *de novo* issues of subject-matter jurisdiction. *Jackson-Platts*, 727 F.3d at 1133. Second, "[a]fter a bench trial, we review the district court's conclusions of law *de novo* and the district court's factual findings for clear error." *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1319 (11th Cir. 2011) (internal quotation marks and citation omitted).

5

### III. DISCUSSION

This appeal presents two issues. First, we must decide whether the ancillary jurisdiction of the district court extended to the supplementary proceeding initiated by National Maritime. Second, we must decide whether the district court erred when it determined that Burrell Shipping fraudulently transferred the proceeds to Straub. We address each issue in turn.

*A. The District Court Had Subject-Matter Jurisdiction to Hear the Supplementary Proceeding Initiated by National Maritime.*

The parties agree that ancillary jurisdiction is the only possible basis for subject-matter jurisdiction over the supplementary proceeding. This Court has not addressed when a supplementary proceeding falls within the ancillary jurisdiction of a district court. We conclude that the district court had ancillary jurisdiction over this supplementary proceeding.

Ancillary jurisdiction exists in two circumstances: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Peacock v. Thomas*, 516 U.S. 349, 354, 116 S. Ct. 862, 867 (1996) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379–80, 114 S. Ct. 1673, 1676 (1994)). The latter category encompasses "a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of

6

federal judgments—including attachment, mandamus, garnishment, and the prejudment avoidance of fraudulent conveyances." *Id.* at 356, 116 S. Ct. at 868 (citations omitted). But ancillary jurisdiction does not extend to "a new lawsuit to impose liability for a judgment on a third party." *Id.* at 359, 116 S. Ct. at 869.

The decision of the Supreme Court in *Peacock* is instructive. After the plaintiff in *Peacock* won a judgment against his employer, the plaintiff initiated a supplementary proceeding to pierce the corporate veil of his employer to reach assets of a third party. *Id.* at 351–52, 116 S. Ct. at 865–66. The Supreme Court held that ancillary jurisdiction did not extend to the supplementary proceeding because the effect of the plaintiff's claim would be "to impose liability for a money judgment on a person not otherwise liable for the judgment." *Id.* at 351, 116 S. Ct. at 865. As the Court explained, the claim was more than an attempt "to force payment . . . or to void postjudgment transfers." *Id.* at 357 n.6, 116 S. Ct. at 868 n.6.

In contrast with *Peacock*, the district court had ancillary jurisdiction over this supplementary proceeding because National Maritime sought to disgorge Straub of a fraudulently transferred asset, not to impose liability for a judgment on a third party. Unlike the defendant in *Peacock*, Straub is not personally liable for the judgment against Burrell Shipping. *Id.* at 351, 116 S. Ct. at 865. Straub's liability is limited instead to the proceeds that Burrell Shipping fraudulently

7

transferred to him. If the value of the transferred proceeds was less than the value of the judgment against Burrell Shipping, National Maritime would have no recourse against Straub for the excess amount. The claim asserted by National Maritime is not "a new lawsuit [that] impose[s] liability for a judgment on a third party." *Id.* at 359, 116 S. Ct. at 869.

Our decision follows the approaches of other authorities. Both the Second and Ninth Circuits have upheld the exercise of ancillary jurisdiction in this circumstance, *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 103–07 (2d Cir. 2001); *Thomas, Head & Griesen Emps. Trust v. Buster*, 95 F.3d 1449, 1453–55 (9th Cir. 1996), and the First and Tenth Circuits have suggested in dicta that they would reach the same conclusion, *Ellis v. All Steel Const., Inc.*, 389 F.3d 1031, 1034 (10th Cir. 2004); *U.S.I. Props. Corp. v. M.D. Const. Co.*, 230 F.3d 489, 498 (1st Cir. 2000). Our decision also comports with the ruling in *Dewey v. West Fairmont Gas Coal Company*, where the Supreme Court approved of the exercise of ancillary jurisdiction over a claim to avoid a fraudulent transfer of assets to a third party. 123 U.S. 329, 332–33, 8 S. Ct. 148, 150 (1887). Although the claim to avoid the fraudulent transfer in *Dewey* was asserted before the entry of a judgment against the transferor, *id.* at 332, 8 S. Ct. 149–50, we see no reason why the result should be different when the claim is asserted after the entry of a judgment. *See Buster*, 95 F.3d at 1455. "[T]he fact that the joinder . . . took place after judgment

8

is not dispositive of whether the court has jurisdiction to effectuate its judgment by recapturing the judgment debtor's fraudulent conveyances." *Id.*; *see also Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 694–95, 70 S. Ct. 861, 867–68 (1950) ("The basis of admiralty's power is to protect its jurisdiction from being thwarted by a fraudulent transfer, and that applies equally whether it is concerned with executing its judgment or authorizing an attachment to secure an independent maritime claim.").

Straub argues that our holding in *Jackson-Platts* establishes that any supplementary proceeding brought under section 56.29(6) is a new action that seeks to impose new liability on a third party, but we disagree. *Jackson-Platts* did not foreclose the exercise of ancillary jurisdiction in this circumstance. Although we described the supplementary proceeding in *Jackson-Platts* as a "'suit[] involving a new party litigating the existence of a new liability,'" 727 F.3d at 1135 (quoting *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir. 1979)) (alteration in original), that description does not apply to this supplementary proceeding. In *Jackson-Platts*, the plaintiff brought the supplementary proceeding to impose liability for the entire judgment on new defendants who had conspired to strip the original defendants of all of their assets. *Id.* at 1132. In contrast, National Maritime sought to recover only a fraudulently transferred asset from a third party.

*B. The District Court Did Not Err When It Concluded that Burrell Shipping Fraudulently Transferred the Proceeds of the Sale to Straub.*

Straub argues that the district court erred when it ruled that the transfer of the proceeds was fraudulent. To determine whether a transfer is fraudulent within the meaning of section 56.29(6)(b), Florida courts look to the Uniform Fraudulent Transfer Act, *id.* §§ 726.101–.112. *Morton v. Cord Realty, Inc.*, 677 So. 2d 1322, 1324 (Fla. Dist. Ct. App. 1996). The Act provides that a preferential transfer to an insider is void if the "claim arose before the transfer was made, . . . the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent." Fla. Stat. § 726.106(2). The district court found that all of these conditions were met, *Straub*, 929 F. Supp. 2d at 1330, and Straub does not contest these findings.

Straub argues that National Maritime failed to establish that the transfer was made "without reasonably equivalent value," but this argument misses the boat. Reasonably equivalent value is not an element of proof under section 726.106(2) or any associated defenses, *see* Fla. Stat. § 726.109. Although subsection (1) of section 726.106 provides that a transfer is fraudulent if it occurred "without receiving a reasonably equivalent value," subsection (1) is unrelated to whether a transfer to an insider is fraudulent under subsection (2). *Id.* § 726.106.

Straub also argues that the transfer is not voidable because he gave "new value" for the transfer, *id.* § 726.109(6), but this argument too fails. Section

726.109(6) provides that a transfer to an insider is not voidable "[t]o the extent the insider gave new value to . . . the debtor after the transfer was made." *Id.* § 726.109(6). Straub presented no evidence that he gave any value after the transfer was made; he instead proved only that he released the antecedent debt. But section 726.109(6) applies when an insider gives new value after a transfer. *See Unif. Fraudulent Transfer Act* § 8 cmt. 6 (2006) (explaining that section 726.109(6) "is adapted from § 547(c)(4) of the Bankruptcy Code, which permits a preferred creditor to set off the amount of new value subsequently advanced against the recovery of a voidable preference").

The district court did not err. The record supports its decision that the transfer to Straub was a fraudulent transfer to an insider, Fla. Stat. § 726.106(2). And we need not address whether the transfer alternatively was fraudulent because Burrell Shipping "inten[ded] to hinder, delay, or defraud," *id.* § 726.105(1)(a).

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of National Maritime and against Straub.

11

JORDAN, Circuit Judge, concurring.

I join the Court's opinion in full.  Although there is language in *Jackson-Platts v. General Electric Capital Corp.,* 727 F.3d 1127, 1134-39 (11th Cir. 2013), which can be read as cutting against a finding of ancillary jurisdiction here, the case is distinguishable because the plaintiff there, though seeking to void a fraudulent transfer, wanted to hold the new parties liable for the entire underlying judgment.  Here, as the Court points out, National Maritime's claim against Mr. Straub in the supplementary proceeding was limited to the value of the fraudulently transferred assets.  We should not read *Jackson-Platts* more broadly given that the Supreme Court has twice held that district courts have jurisdiction to entertain ancillary proceedings challenging fraudulent transfers by defendants.  *See Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 690-95 (1950) (fraudulent transfer of vessel which had been attached pre-judgment in initial admiralty action); *Dewey v. West Fairmont Gas Coal Co.,* 123 U.S. 329, 332-33 (1887) (pre-judgment fraudulent transfer of assets to non-diverse defendant).