**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-11642

————————————————

CASA EXPRESS CORP,
  as Trustee of Casa Express Trust,

                                                                    *Plaintiff-Appellant,*

*versus*

BOLIVARIAN REPUBLIC OF VENEZUELA, et al.,

                                                    *Defendants-Third Party Defendants,*

PLANET 2 REACHING, INC.,
POSH 8 DYNAMIC, INC.,
RIM GROUP INVESTMENTS CORP.,
RIM GROUP INVESTMENTS I CORP.,
RAUL GORRIN BELISARIO, et al.,

                                                                    *Defendants-Appellees.*

———————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-23103-BB

———————————————

Before JILL PRYOR, LUCK, and HULL, Circuit Judges.

HULL, Circuit Judge:

In 2018, Casa Express Corp. ("Casa") obtained a $40 million judgment against the Bolivarian Republic of Venezuela ("Venezuela") in the Southern District of New York based on unpaid global bonds and a global note issued by Venezuela. In 2021, Casa initiated supplementary proceedings in the Southern District of Florida against third-party defendants Raul Gorrin Belisario ("Gorrin") and his six corporate entities. Casa sought to execute the New York judgment against eight real properties owned by those shell corporate defendants. Importantly, though, none of the properties are owned by Venezuela, the judgment debtor.

Nonetheless, in an effort to execute the New York judgment in Florida, Casa's amended motion alleged that Gorrin (1) bribed Venezuelan public officials so that he could obtain foreign currency exchange contracts from the Venezuelan government; (2) profited from those unlawfully obtained contracts; and (3) used those profits to purchase the eight real properties in Florida through the six corporate defendants. Casa asked the district court to impose a constructive trust on the eight properties and to find that the

properties belonged to Venezuela based on Casa's constructive-trust theory.

Defendants Gorrin and the six corporate entities moved for judgment on the pleadings based on the district court's lack of ancillary jurisdiction over Casa's claim and alternatively on the merits. After the district court granted the defendants' motion, Casa appealed.

After review and oral argument, we hold that the district court lacked ancillary jurisdiction because (1) Casa's amended motion seeks to impose liability on third parties who are not already obligated to pay the New York judgment, and (2) Casa's action against the defendants is founded upon different facts and theories of liability than its lawsuit against Venezuela. Accordingly, we affirm the district court's ancillary-jurisdiction ruling, vacate its alternative merits rulings, and remand for the district court to dismiss this case without prejudice for lack of subject matter jurisdiction.

## I. CASA'S NEW YORK LAWSUIT AGAINST VENEZUELA

### A. Casa's Claims Against Venezuela

In December 2018, Casa filed a complaint against Venezuela in federal court in the Southern District of New York. Casa alleged that it was the beneficial owner of interests in debt securities, "global bonds" and a "global note," issued by Venezuela in 1998 and 2002 pursuant to Fiscal Agency Agreements ("FAAs"). Under the FAAs, Venezuela was obligated to repay the principal of the bonds and note in full in August 2018 and to pay interest

semi-annually starting in February 2018.  The FAAs contained a provision waiving Venezuela's immunity from suit as to the securities.

Casa owned a beneficial interest in the bonds in the principal amount of $1,845,000, as well as a beneficial interest in the note in the principal amount of $27,170,000, which entitled it to $125,690.63 per interest payment for the bonds and $1,850,956.25 per interest payment for the note.  Casa stated that Venezuela defaulted on the bonds and note when, in 2018, it failed to repay the principal and make the required interest payments on time.  It added that interest on principal would continue to accrue until Venezuela repaid the principal in full.

In the New York case, Casa asserted two claims of breach of contract against Venezuela based on the bonds and note.  Casa contended that it was entitled to its beneficial interest in the principal of the bonds and note plus any accrued interest, costs, and attorney's fees.  Casa moved for summary judgment.

## B.    2020 New York Judgment Against Venezuela

In a September 2020 order, the district court in New York granted summary judgment to Casa as well as to other different plaintiffs with identical claims in separate suits.  The district court concluded that (1) Venezuela validly waived its immunity from suit under the Foreign Sovereign Immunities Act ("FSIA") in the FAAs, and (2) Casa was entitled to its requested relief.

On November 23, 2020, the district court entered a final judgment against Venezuela in favor of Casa ("New York

judgment").[1]  The judgment stated that Casa was entitled to a total of $43,360,535.19 plus post-judgment interest from Venezuela.

In June 2021, in New York, Casa filed a motion under 28 U.S.C. § 1610(c) seeking to execute the judgment against Venezuela's assets because Venezuela failed to satisfy the judgment within a reasonable period of time.  The district court granted Casa's motion because Venezuela had not made any payments towards the New York judgment.

## II.  CASA'S FLORIDA LAWSUIT

In August 2021, Casa registered the New York judgment in federal court in the Southern District of Florida.  Casa then filed a motion to commence supplementary proceedings pursuant to Fla. Stat. § 56.29.  That Florida statute allows a judgment creditor (Casa) to execute an unsatisfied judgment against property of the judgment debtor (Venezuela) even if it is in the hands of a third party.  Fla. Stat. § 56.29.  A year later, in September 2022, Casa amended the motion.[2]  In its amended motion, Casa sought to execute the New York judgment against eight real properties that

---

[1] The November 23 judgment was an amended judgment that only differed from the initial judgment in that it included a specified amount of costs and attorney's fees to be awarded to Casa to which the parties stipulated.

[2] Casa's initial and amended motions are for the most part substantively the same, with the primary differences being that in the amended motion Casa sought for the first time to implead an additional defendant, added allegations to establish that the district court had personal jurisdiction over Gorrin, and included further arguments in support of its claim.

it claimed, under a constructive-trust theory, belonged to Venezuela under 28 U.S.C. § 1610(c), Fed. R. Civ. P. 69(a) and Fla. Stat. § 56.29.

## A.    Casa Impleads Nine Third-Party Defendants

Casa's amended motion sought to implead as third-party defendants three individuals and six corporate entities, to wit: (1) Gorrin, (2) Alejandro Andrade Cedeno ("Andrade"), (3) Claudia Patricia Diaz Guillen ("Diaz"), (4) RIM Group Investments Corp., (5) RIM Group Investments I Corp., (6) RIM Group Investments II Corp., (7) RIM Group Investments III Corp., (8) Posh 8 Dynamic Inc., and (9) Planet 2 Reaching Inc. Casa asked the district court to issue statutory notices to appear to these third-party defendants.

Specifically, Casa's amended motion sought to execute the New York judgment, under a constructive-trust theory, against eight real properties located in Miami, Florida, owned by the corporate defendants. Here is a summary of the complicated facts Casa alleged to support its constructive-trust theory.

## B.    Casa's Alleged Bribery Scheme by Gorrin and Others

The Venezuelan National Treasury, known in Spanish as the Oficina Nacional del Tesoro ("ONT"), sold Venezuelan bonds denominated in U.S. dollars and other foreign currencies. The ONT then exchanged the foreign-currency proceeds generated from the bond sales into the Venezuelan national currency, bolivares, through either (1) the Venezuelan National Bank or (2) brokerage firms called "casas de bolsa," at a government

exchange rate.  However, the casas de bolsa had access to a "black market" exchange rate that was higher than the government rate. This allowed the casas de bolsa "to sell the preferential dollars at the higher rate and retain massive profits from the spread."  Only ONT-approved casas de bolsa could conduct the currency exchanges for the Venezuelan government.

Gorrin controlled one of the ONT-approved casas de bolsa. From 2008 through 2017, Gorrin allegedly paid hundreds of millions of dollars in bribes to Andrade, the Venezuelan National Treasurer from 2007 through 2011, to secure foreign-currency exchange contracts with the Venezuelan government.  Casa asserted that these contracts—awarded in exchange for bribes—breached Andrade's fiduciary duties to the Venezuelan government.  The awarded contracts allowed Andrade and Gorrin to unjustly enrich themselves at the expense of the Venezuelan government and people.

When Andrade stepped down from his position as National Treasurer, Andrade introduced Gorrin to his successor, Diaz. While Gorrin continued paying bribes to Andrade, Gorrin started paying bribes to Diaz through her husband for the same purpose. Casa asserted that Diaz also breached her fiduciary duties to Venezuela by accepting Gorrin's bribes.

The U.S. government indicted Andrade, Gorrin, Diaz, and Diaz's husband for their roles in the bribery scheme and the laundering of money obtained through the scheme into the United

States.  Gorrin was never arrested and remains a fugitive.  Andrade, Diaz, and Diaz's husband were convicted.

In January 2019, the U.S. Department of the Treasury Office of Foreign Assets Control ("OFAC") sanctioned Gorrin for his role in the bribery scheme by placing him on the Specially Designated Nationals and Blocked Persons List.  OFAC also designated as beneficiaries of the scheme the six corporate defendants here, which Casa alleged were owned or controlled by Gorrin and his wife.  Those sanctions blocked the sale or transfer of the properties without a license issued by OFAC.  Casa conceded that it did not have an OFAC license at that time but argued that it did not need one until the eventual execution sale of the properties.

## C.    Alleged Constructive Trust Against Eight Properties

Casa then alleged that Gorrin purchased the eight real properties between 2008 and 2016 through the six corporate defendants using funds Gorrin misappropriated from Venezuela through the bribery scheme.  As support, Casa retained a forensic accountant who prepared a report that concluded that Gorrin had purchased the eight real properties using the funds he obtained through the bribery scheme.  The report was based on the facts that (1) OFAC had designated the eight real properties as part of its sanctions against Gorrin, and (2) Gorrin acquired the properties after the commencement of the bribery scheme.

Casa argued that Fla. Stat. § 56.29 allowed it to execute the New York judgment against the eight properties even though they were owned by Gorrin's corporations because they actually

belonged to Venezuela. And Casa alleged that those properties were not entitled to immunity from execution under the FSIA. Casa asserted that the properties belonged to Venezuela under the Florida-law constructive-trust doctrine because (1) Andrade and Diaz breached their fiduciary obligations to Venezuela by accepting Gorrin's bribes in exchange for providing him with the foreign-currency exchange contracts; (2) Andrade, Diaz, and Gorrin were unjustly enriched through this scheme at the expense of Venezuela; (3) Andrade and Diaz conferred a benefit to Gorrin by allowing him to conduct the exchange transactions illegally at a profit; and (4) during 2008 to 2016 Gorrin used the misappropriated funds to purchase the eight properties in Florida through the six corporate defendants.

Casa's amended motion also alleged that Gorrin was "a trustee ex maleficio because he obtained Venezuelan funds with actual knowledge that a breach of trust was being committed by Andrade." Casa alleged that Gorrin was accountable for participating in Andrade's and Diaz's breaches of trust to the Venezuelan government because he committed overt acts in furtherance of these trust breaches with knowledge that the trust breaches were being committed. For those reasons, Casa concluded that it had established every element for the imposition of a constructive trust as to the eight real properties under Florida law.

**D.     District Court's Order Granting Casa's Amended Motion**

In a September 2022 order, the district court granted Casa's motion to commence the supplementary proceedings and issued notices to appear to the proposed third-party defendants. The order directed the third-party defendants to respond to Casa's motion and explain why the properties should not be applied to satisfy the New York judgment.

**E.     Third-Party Defendants' Motions for Judgment on the Pleadings**

Gorrin and the corporate defendants filed a response denying Casa's allegations and raising multiple jurisdictional, immunity, and other bars to Casa's amended motion.

Later on, Gorrin moved for judgment on the pleadings. He argued that (1) Casa failed to properly serve him, and (2) Casa failed to establish that the district court had personal jurisdiction over him.

Additionally, in a separate motion, Gorrin and the six corporate defendants jointly moved for judgment on the pleadings on alternative grounds. Their motion argued that (1) the district court lacked ancillary jurisdiction over the action under *Peacock v. Thomas*, 516 U.S. 349 (1996) ("*Peacock*"); (2) Casa lacked standing to bring its constructive-trust claim against them on Venezuela's behalf; (3) even assuming that the relevant properties belonged to Venezuela, the properties were immune from attachment and execution under the FSIA; (4) Casa's execution efforts were prohibited by the OFAC sanctions; (5) Casa's claim was barred by

the act of state doctrine because it required the court to invalidate the foreign-currency exchange transactions at the heart of the bribery scheme, which were sovereign acts of Venezuela; and (6) Casa failed to allege a viable constructive-trust theory because it did not establish a financial link between the misappropriated funds and the purchase of the relevant properties.[3]

## F.    Report and Recommendation

In a report and recommendation ("R&R"), the magistrate judge recommended that the district court (1) grant in part Gorrin's motion for judgment on the pleadings based on lack of service and personal jurisdiction and (2) grant in part Gorrin and the corporate defendants' joint motion for judgment on the pleadings.

Specifically, the magistrate judge determined, among other things, that the district court lacked ancillary jurisdiction over the proceedings under *Peacock*. In *Peacock*, the Supreme Court held that district courts could not exercise "ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." 516 U.S. at 357. The Supreme Court concluded that the district court in the case before it lacked ancillary jurisdiction because the plaintiff was attempting to execute a judgment in a subsequent

---

[3] Andrade, Diaz, and Venezuela did not respond to Casa's amended motion, and Casa obtained default judgments against Andrade and Diaz and a partial default judgment against Venezuela. Andrade, Diaz, and Venezuela did not appeal.

lawsuit against an individual not already liable for that judgment based on new facts and law not at issue in the initial action that produced the judgment. *Id.* at 358-59.

The magistrate judge concluded that the district court lacked ancillary jurisdiction under *Peacock* because Casa was attempting to execute a judgment against third parties who had never been held liable for that judgment on the global bonds and global note. The magistrate judge also distinguished this case from *National Maritime Services, Inc. v. Straub*, 776 F.3d 783 (11th Cir. 2015) ("*Straub*"), because that decision concerned a fraudulent-transfer claim rather than a constructive-trust claim.

The magistrate judge also found that Casa failed to establish personal jurisdiction over Gorrin for several reasons. The magistrate judge pointed out that Casa had relied on subsections of Florida's long-arm statute concerning a nonresident defendant's business activity and tortious conduct in Florida. However, Casa did not adequately allege that Gorrin committed a tortious act within Florida because the bribery and illegal profits occurred in Venezuela, not Florida.

Additionally, the magistrate judge concluded that Casa failed to allege adequately that Gorrin conducted business in Florida. Casa failed to link any of the tortious conduct—the allegedly misappropriated Venezuelan funds—to the eight properties, which was necessary for it to prove its constructive-trust claim. Lastly, the magistrate judge stated that

24-11642                Opinion of the Court                13

exercise of personal jurisdiction did not comport with the Due Process Clause.

Casa filed objections to the R&R.

## G.    District Court's Order

On April 24, 2024, the district court adopted in part the R&R and granted in part defendant Gorrin's motion for judgment on the pleadings based on lack of service and personal jurisdiction. The district court also granted in part Gorrin and the corporate defendants' joint motion for judgment on the pleadings on multiple grounds, including lack of ancillary jurisdiction.[4] The district court agreed with the magistrate judge on all but one of the issues raised by the defendants.

In relevant part here, the district court agreed with the magistrate judge that it lacked ancillary jurisdiction under the Supreme Court's *Peacock* decision because Casa was effectively attempting to impose liability for the New York judgment on Gorrin and the corporate defendants. The district court explained that Gorrin and the corporate defendants had never been held liable for the New York judgment based on the unpaid global bonds and global note. Rather, the whole basis for Casa's action was to establish the bribery scheme and a link between the misappropriated Venezuelan funds and the Florida properties in an

---

[4] The district court also affirmed an order issued by the magistrate judge denying a motion filed by Casa seeking to extend notices of *lis pendens* as to the real properties.

effort to impose a constructive trust against the properties. Because the Florida proceedings were based on different parties, facts, and legal theories than the New York lawsuit, the district court concluded that *Peacock* prohibited the exercise of ancillary jurisdiction. The district court also declined to address new jurisdictional arguments raised by Casa for the first time in its objections to the R&R.

The district court also agreed with the R&R's finding that it lacked personal jurisdiction over Gorrin because Casa's allegations were insufficient to establish that Gorrin conducted business in Florida by renting the relevant properties for profit. It also stated that Casa failed to establish connexity between Gorrin's alleged tortious conduct and the relevant properties to support a finding of personal jurisdiction.

Casa timely appealed.

### III.  DISCUSSION

Federal courts can act only if they have subject matter jurisdiction. *See Santiago-Lugo v. Warden*, 785 F.3d 467, 471 (11th Cir. 2015). At the outset, we are thus obligated to determine whether the district court had subject matter jurisdiction before we can address the merits of this appeal. *Id.* We review *de novo* the district court's conclusion that it lacked subject matter jurisdiction. *Holston Invs., Inc. B.V.I. v. LanLogistics Corp.*, 677 F.3d 1068, 1070 (11th Cir. 2012).

## A.    Ancillary Jurisdiction

"[I]nferior federal courts are courts of limited jurisdiction." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). As such, federal district courts "are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution, and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Id.* (quotation marks omitted). Typically, where a federal court has jurisdiction over a case, and a final judgment is entered in that case, the court's jurisdiction to act is over. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994).

But in narrow circumstances, federal courts may exercise what is termed "ancillary jurisdiction." *Id.* at 378-79. Under the doctrine of ancillary jurisdiction, federal courts may exercise jurisdiction "over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id.* at 378. The Supreme Court has explained that ancillary jurisdiction exists in two circumstances: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379-80 (citations omitted). Simply put, federal courts have ancillary jurisdiction to (1) dispose of factually dependent claims, and (2) effectuate their decrees or judgments.

Under the second category, "ancillary jurisdiction [may be used] in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments." *Peacock*, 516 U.S. at 356. "In defining that power, [the Supreme Court] ha[s] approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Id.*

But ancillary jurisdiction does not extend to supplementary proceedings "to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment" or to exercise "jurisdiction over proceedings that are entirely new and original." *Id.* at 357-58 (quotation marks and citations omitted). Moreover, ancillary jurisdiction is not applicable "where the relief sought is of a different kind or on a different principle than that of the prior decree." *Id.* at 358 (quotation marks and citations omitted) (alteration adopted). It does not extend to supplementary proceedings "founded . . . upon entirely new theories of liability." *Id.*

The Supreme Court addressed the limits of ancillary jurisdiction in *Peacock*, which we review in detail.

B.    *Peacock v. Thomas*, **516 U.S. 349 (1996)**

In *Peacock v. Thomas*, a plaintiff sued his former employer and an officer and shareholder of the employer under the Employee Retirement Income Security Act ("ERISA"). *Id.* at 351.

24-11642                Opinion of the Court                17

The plaintiff alleged that the defendants breached their fiduciary duties in their administration of a pension benefits plan. *Id.* The district court entered a money judgment against the employer but concluded that the officer/shareholder was not a fiduciary and so not personally liable. *Id.*

The plaintiff unsuccessfully attempted to collect the judgment from the employer. *Id.* at 352. The plaintiff then sued the officer/shareholder in federal court, claiming that the officer/shareholder "had entered into a civil conspiracy to siphon assets from [the employer] to prevent satisfaction of the ERISA judgment." *Id.* Specifically, the plaintiff sought to execute the judgment against the officer/shareholder by asserting claims of "pierc[ing] the corporate veil" and fraudulent transfer. *Id.* The district court entered judgment against the officer/shareholder for the full amount of the initial money judgment even though the total amount of the alleged fraudulent transfers was less than the judgment. *Id.*

The Supreme Court held that the district court lacked subject matter jurisdiction. *Id.* at 352-60. The Court first concluded that ERISA and 28 U.S.C. § 1331 did not provide the district court with jurisdiction. *Id.* at 352-54. The Court then held that the district court also lacked ancillary jurisdiction for several reasons. *Id.* at 354-60.

The Supreme Court first explained that it had "never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment

on a person not already liable for that judgment." *Id.* at 357. Next, the Supreme Court stated that ancillary jurisdiction should not be exercised in the second lawsuit because it was "founded not only upon different facts than the ERISA suit, but also upon entirely new theories of liability." *Id.* at 358. In the second suit, the employee "alleged civil conspiracy and fraudulent transfer of [the employer's] assets, but . . . no substantive ERISA violation." *Id.* The claims in the second suit—"civil conspiracy, fraudulent conveyance, and 'veil-piercing'—all involved new theories of liability not asserted in the ERISA suit." *Id.* at 358-59. The Supreme Court added that, other than the money judgment itself, the enforcement action had "little connection" to the initial action. *Id.* at 359.

The Supreme Court distinguished the case before it from cases in which it had concluded that ancillary enforcement jurisdiction existed because the latter "merely required compliance with the existing judgment[s] by the persons with authority to comply." *Id.* at 358. The Court made clear that in those cases it did not "authorize the shifting of liability for payment of the judgment from the judgment debtor to" third parties, as the plaintiff was attempting to do. *Id.* It also "cautioned against the exercise of jurisdiction over proceedings that are entirely new and original or where the relief sought is of a different kind or on a different principle than that of the prior decree." *Id.* (quotation marks and citations omitted) (alteration adopted).

**C.**  *National Maritime Services, Inc. v. Straub*, **776 F.3d 783 (11th Cir. 2015**)

Subsequent to *Peacock*, this Court recently discussed ancillary jurisdiction in *Straub*, which we review.

In *Straub*, this Court applied *Peacock* in determining whether a district court had ancillary jurisdiction over a Fla. Stat. § 56.29 supplementary proceeding. In that case, a plaintiff sued Burrell Shipping Company and its president for breach of contract and unjust enrichment. *Straub*, 776 F.3d at 785. The plaintiff obtained a money judgment against Burrell Shipping but was unable to hold the president individually liable. *Id.*

While the action was pending, Burrell Shipping sold its sole asset to a third party and transferred the proceeds of the sale to the president. *Id.* The plaintiff attempted to execute the money judgment against Burrell Shipping but was unsuccessful because it had no assets after the sale and transfer. *Id.*

The plaintiff then initiated § 56.29 supplementary proceedings in federal court against the president in an attempt to void the transfer, arguing that it was a fraudulent attempt to avoid payment of the judgment. *Id.* The plaintiff initiated the supplementary proceedings under a provision of § 56.29 that specifically concerned fraudulent-transfer claims. *Id.* That provision in § 56.29 expressly allows a court to void "any gift, transfer, assignment or other conveyance of personal property [that] has been made or contrived by the judgment debtor to delay,

hinder, or defraud creditors[.]" Fla. Stat. § 56.29(3)(b).[5] The district court concluded that the transfer was fraudulent and entered judgment against the president in the amount of the initial money judgment, which was less than the total amount of the transferred assets. *See Straub*, 776 F.3d at 785-86.

This Court held that the district court had ancillary jurisdiction over the supplementary proceedings. *Id.* at 786-88. We reasoned that, unlike in *Peacock*, the plaintiff was seeking to "disgorge [the company's president] of a fraudulently transferred asset, not to impose liability for a judgment on a third party." *Id.* at 787. This Court explained that the president was not personally liable for the initial money judgment, but rather his liability was limited to the proceeds that Burrell Shipping fraudulently transferred to him. *Id.* This Court emphasized that, if the value of the transferred proceeds was less than the value of the judgment against Burrell Shipping, the plaintiff would have no recourse against the president for the excess amount. *Id.*

## D.    Analysis

Applying this precedent, we readily conclude that the district court lacked ancillary jurisdiction over Casa's

---

[5] When *Straub* was decided, the fraudulent-transfer provision of Fla. Stat. § 56.29 was located at subsection (6)(b). *See* Fla. Stat. § 56.29(6)(b) (2014). However, in 2016, the fraudulent-transfer provision was moved to subsection (3)(b). *See id.* § 56.29(3)(b) (2016). The substance of the provision did not change.

supplementary proceedings under Fla. Stat. § 56.29 against defendant Gorrin and the six corporate defendants.

First, a judgment did not already exist in favor of Venezuela against defendants Gorrin and the corporate entities. Rather, Casa was attempting to impose a judgment on third persons—Gorrin and his companies—who did not already owe the New York judgment.

This is almost identical to the type of case in which the Supreme Court explained that a district court would lack ancillary jurisdiction to enforce a judgment. *See Peacock*, 516 U.S. at 356-59. Casa was attempting "in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357. It was not merely seeking "compliance with the existing judgment by the persons with authority to comply," but rather was asking the district court to shift "liability for payment of the judgment from the judgment debtor to" Gorrin and the corporate defendants by requiring them to hand over the real properties. *Id.* at 358.

Second, the supplementary proceedings were "entirely new and original" and sought relief "of a different kind or on a different principle than that of the prior decree." *Id.* (quotation marks omitted). Casa obtained the New York judgment based on Venezuela's nonpayment of the bonds and the note. That nonpayment has nothing to do, either factually or legally, with Gorrin's alleged bribery and currency-exchange scheme in

22                    Opinion of the Court                    24-11642

Venezuela or with Gorrin's purchase of the real properties in Florida.

We recognize that Casa's Florida lawsuit was based on a constructive-trust theory. Specifically, Casa attempted to execute the New York judgment against the real properties purchased by Gorrin through the corporate defendants by arguing that those properties actually belonged to Venezuela under a constructive-trust theory.[6] Casa asserts three persons—Andrade, Diaz, and Gorrin—siphoned off Venezuelan funds through bribes and a currency-exchange scheme and then Gorrin used those funds to buy properties in Florida. But that is a new theory against three different people who had nothing to do with the nonpayment of the bonds held by Casa.

Casa relies on *Straub*, but that decision is inapposite. First and foremost, Casa did not assert a fraudulent-transfer claim against Gorrin and the corporate defendants. Casa did not allege that Venezuela transferred the Florida real properties to Gorrin and the corporate defendants for the purpose of Venezuela's avoiding payment of the New York judgment. Venezuela, other than not

---

[6] To establish a constructive trust under Florida law, Casa would be required to show "(1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship, and (4) unjust enrichment." *Bank of Am. v. Bank of Salem*, 48 So. 3d 155, 158 (Fla. 1st DCA 2010) (quotation marks omitted). The defendants argue that Casa's motion failed to adequately allege those elements, but we need not decide that issue.

paying the bonds, did not do anything to transfer any bond money to the third-party defendants.  This is not a fraudulent-transfer case.

We also reject Casa's argument that its constructive-trust claim is analogous to the fraudulent-transfer claim in *Straub*.  In *Straub*, the plaintiff sought to recover assets previously held by the judgment debtor that it transferred to a third party for the purpose of avoiding payment of the money judgment.  But in this case, Casa seeks to execute the New York judgment against properties held by third parties, which Venezuela never possessed, based on facts and law completely unrelated to the New York suit.  *Straub*, 776 F.3d at 785-88.  Further, the assets in *Straub* undeniably at one point belonged to the judgment debtor.  *Id*.  But the only way that Casa can show in this case that the real properties belonged to Venezuela is first by proving Gorrin's monetary liability for the bribery and currency-exchange scheme and then by proving that Gorrin used the specific funds that he obtained from that scheme to purchase the eight properties.

It is true that, like in this case, the district court in *Straub* was required to make factual and legal findings unrelated to the merits of the initial lawsuit that produced the money judgment in order to grant the plaintiff relief.  *See id*.  However, unlike in this case, the fraudulent-transfer claim in *Straub* was directly tied to the district court's power to execute the money judgment.  *See id*.  The fraudulent-transfer claim derived from the judgment debtor's own active attempts to avoid payment of the money judgment by transferring assets to a third party, who was also a defendant in the

initial lawsuit. *Id.* at 785-86. Therefore, the district court's ancillary enforcement jurisdiction in *Straub* stemmed from its power to "vindicate its authority" and "effectuate its decrees." *Kokkonen*, 511 U.S. at 380.

In stark contrast, Casa's constructive-trust claim has nothing to do with the New York judgment and instead is simply an attempt to shift Venezuela's liability for that judgment to Gorrin and the corporate defendants based on completely new facts and legal theories. Casa's constructive-trust suit is more like a wholly independent substantive action than an action filed for the limited purpose of "enabl[ing] [the] court to function successfully." *Id.*

In sum, this case is like *Peacock*, not *Straub*. And the district court clearly lacked ancillary jurisdiction over the supplementary proceedings.

### E.    No Alternative Jurisdiction Alleged

As a final matter, we note that the fact that the district court lacked ancillary jurisdiction does not necessarily mean that it lacked subject matter jurisdiction altogether. Rather, it simply means that the district court needed to have a basis for jurisdiction independent of the New York lawsuit and judgment to rule on the merits of this case. *See, e.g.*, *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1132, 1134 (11th Cir. 2013) (noting that a district court had diversity jurisdiction over claims asserted in Fla. Stat. § 56.29 supplementary proceedings).

In its appellate briefs, however, Casa did not set forth or argue any alternative substantive ground for the district court's subject matter jurisdiction.  And we have found none.[7]

### IV.  CONCLUSION

We affirm the district court's ruling that it lacked ancillary jurisdiction over the supplementary proceedings.  Because the district court lacked jurisdiction, we vacate the district court's alternative merits rulings and remand with instructions to the district court to reenter judgment dismissing the action without prejudice for lack of subject matter jurisdiction.  *See DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1303 (11th Cir. 2008).

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

[7] Further, at oral argument, Casa conceded that its argument as to the district court's jurisdiction was based solely on ancillary jurisdiction.